Sept. 10, 1997.

**Janet WALKER and Robert G. Walker, Plaintiffs,**

**v.**

**Rev. Dr. David L. DICKERMAN, D. Min., Defendant.**

**No. 3:94CV685 (RNC).**

United States District Court, D. Connecticut.

Oct. 8, 1997.

Holly Abery–Wetstone, Wetstone & D'Ambrosio, Farmington, CT, for Plaintiffs.

Thomas J. Sansone, Carmody & Torrance, Waterbury, CT, for Defendant.

## *ORDER*

CHATIGNY, District Judge.

After review and absent objection, the Magistrate Judge's proposed findings of fact and conclusion of law are hereby approved and adopted.

So ordered.

## *PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW*

MARTINEZ, United States Magistrate Judge.

This action arises out of the sexual abuse of the plaintiff, Janet Walker, by the defendant, Reverend Doctor David L. Dickerman, over a period of years when Janet Walker was a minor. The plaintiffs, Janet Walker and her husband, Robert G. Walker, assert five causes of action against the defendant. In the first four counts, the plaintiff Janet Walker asserts claims of negligent assault, intentional assault, negligent infliction of emotional distress, and intentional infliction of emotional distress. In the fifth count, the plaintiff Robert G. Walker asserts a claim of loss of consortium. The plaintiffs seek compensatory damages in the amount of $2,000,000, punitive damages on the intentional tort claims, costs and interest.

## I. PROCEDURAL HISTORY

This action was commenced in May 1994. The defendant appeared, but failed to answer the complaint. Following the entry of default against the defendant, a hearing on damages was held on October 8, 1996. The defendant had notice of the hearing but did not appear. Testimony of both of the plaintiffs and an affidavit of Janet Walker's therapist were admitted into evidence at the hearing. Subsequent to the hearing, on October 31, 1996, counsel for the plaintiffs submitted an affidavit regarding the plaintiffs' legal fees and costs in this action. The following are the court's proposed findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. *The Parties*

1. The plaintiffs Janet Walker and Robert G. Walker are married and live with their children, a 3½ year old daughter and 2 year old son, in Fairfield, Connecticut. The plaintiffs were married in 1991. Janet Walker is currently 37 years old.

2. The defendant, David Dickerman, is a former associate minister of the Immanuel Congregational Church in Hartford, Connecticut.

3. Janet Walker grew up in her family's home in West Hartford, Connecticut.

4. While growing up, Janet Walker was very involved with the Immanuel Congregational Church. She was baptized in the church and educated in the church school. She sang in the church choirs. In the eighth grade, she became involved in the church youth group.

### B. *The Defendant's Abuse of Janet Walker*

5. At 14 years old, Janet Walker felt alone and miserable at home. She had been sexually abused by her father. Her brothers and sisters, who were several years older than she, had already left home. She decided that she wanted to run away. Having had a religious upbringing, she turned to the defendant, an associate minister of the Immanuel Congregational Church, for help and counseling. At that time, the defendant was in his thirties, married, and had children. When the plaintiff asked the defendant for help, the defendant responded by kissing her on the mouth and telling her that he would take care of her.

6. After this initial contact, the defendant increased his physical contact with the plaintiff and maintained a sexual relationship with her over the next four years. Throughout this relationship, the defendant kissed and hugged the plaintiff, fondled her breasts and genitals, and digitally penetrated her. He had the plaintiff fondle his genitals and perform oral sex on him. The defendant did not have sexual intercourse with the plaintiff.

7. During the time that the plaintiff was in high school, the defendant had sexual contact with her in many places, including his car, his home, the parsonage and the church building, and the church's summer conference center on Star Island in Portsmouth, New Hampshire.

8. The frequency with which the defendant saw Janet Walker varied from once in two weeks to as much as several times in one week. Although the defendant did not have sexual contact with the plaintiff every time they saw each other, each time they were together usually involved at least a kiss.

9. In addition to the sexual abuse, the defendant was verbally abusive to the plaintiff. The defendant told the plaintiff on different occasions that he loved her despite the fact that she was overweight, that she had small eyes, and that she was not as smart as he.

10. The abusive relationship between the defendant and Janet Walker continued until Janet Walker was 18 years old. During the winter following the plaintiff's graduation from high school, the defendant informed the plaintiff that their relationship was over. Angry and confused, the plaintiff suspected that the defendant was seeing other women.

### C. The Effects of the Abuse on Janet Walker's Experiences as a High School Youth

11. The defendant's relationship with Janet Walker caused her to suffer depression and feelings of inferiority, alienation and guilt during her high school years.

12. As a high school student, Janet Walker believed she loved the defendant. She wondered how she would be able to be involved with the defendant for the rest of her life and she worried that she would be replaced.

13. Janet Walker had a close relationship with the defendant's family during the time that she was involved with the him. She cared for and respected the defendant's wife, who was active in the church youth group and the women's fellowship group. Janet Walker loved the defendant's children and was their primary babysitter.

14. Throughout Janet Walker's high school years, the defendant encouraged the plaintiff's involvement in church activities. She became vice president of the church youth group. She was a member of the church's board of education. She taught Sunday School; she preached; she ushered; she worked at all the church fairs and pot luck suppers. As a junior in high school, she thought she would enter the ministry.

15. As a result of her relationship with the defendant, Janet Walker missed social opportunities with her peers and other normal high school activities. Although she had enjoyed social gatherings with friends in the seventh and eighth grades, she withdrew from such activities in high school because her involvement with the defendant caused her to devote much time to church functions.

16. While in high school, Janet Walker felt that she did not fit in with her peers. She was not part of a social group. Unlike other high school students, she was involved in an adult relationship and in adult activities in the church.

17. Some of the plaintiff's high school friends were aware of her relationship with the defendant and were very critical and judgmental of the relationship. As a result, the plaintiff's high school friendships were very limited.

18. The defendant discouraged the plaintiff's relationships with boys her age. Because of the defendant's criticisms, the plaintiff considered boys her age to be a bad influence and dated only two boys during all her high school years.

19. The plaintiff preferred to spend her time at the church or with the defendant rather than studying and, as a result, her grades dropped to Cs and Ds. Her parents were critical of her grades and her time away from school. They did not like the defendant.

### D. The Impact of the Abusive Relationship on Janet Walker's Education and Earning Capacity

20. After the abusive relationship between the defendant and Janet Walker was

terminated, Janet Walker continued to suffer emotional distress caused by the defendant's abuse.

21. As a result of the emotional distress inflicted by the defendant, Janet Walker repeatedly interrupted her higher education and delayed the start of her psychotherapy practice. Until she eventually started her own practice in 1993, the plaintiff worked in jobs that were beneath her level of training and education because she felt she could not handle job stress on top of the emotional distress she was already suffering.

22. At about the time that the plaintiff graduated from high school, the defendant told her that he did not think that she was ready for college and encouraged her to pursue missionary work. Heeding the defendant's advice, the plaintiff deferred college and worked at a mission in North Carolina for one year. It was during the year that the plaintiff was working at the mission that the defendant informed her that their relationship was over.

23. After she ended her work at the North Carolina mission, the plaintiff enrolled in college in Indiana. During the plaintiff's first year of college, she felt that her life was falling apart. She therefore interrupted her college studies and returned to Connecticut. At this time in her life, Janet Walker was very depressed, had low self-esteem and entertained thoughts of suicide. She found alcohol to be numbing and abused alcohol to the point that it prevented her from functioning.

24. In March 1980, Janet Walker was admitted to the Institute of Living to treat her problem with alcohol. She remained at the Institute from March 30, 1980 until May 15, 1980.

25. After being discharged from the Institute of Living, she returned to college and became involved with a man fourteen years her senior. Again feeling that her self-esteem was crashing, she left college after the completion of her sophomore year.

26. After her sophomore year, she took courses at Indiana University and held a job at a restaurant as a dining room hostess. After being promoted to Assistant Manager and then Manager at the restaurant, she left the job because the combination of work and school was too stressful for her. She left Indiana in April of 1983 and returned to Connecticut.

27. After returning to Connecticut, she worked at Kelly Services and at the Christian Activities Council. She also took college courses at the University of Hartford and at Central Connecticut State University.

28. In 1987, nine years and eleven months after the plaintiff began her college education, she graduated with a Bachelor of Arts from Central Connecticut State University.

29. The plaintiff continued her studies at Antioch College and received her master's degree in psychological counseling in 1989.

30. While continuing her studies at Antioch College, the plaintiff interned at Middlesex Memorial Hospital.

31. The plaintiff's career objective was to have her own practice as a psychotherapist. She would have started a private practice in 1990, but was unable to because she lacked the confidence and financial resources to do so. Instead, she worked as a counselor at an AIDS clinic until March 1990, and then as a clinical social worker at Glastonbury Family Services until November 1992. She left Glastonbury Family Services in November of 1992 because she was pregnant.

32. Janet Walker started her own psychotherapy practice in 1993. She currently carries an eight client caseload and works out of her home. She charges her clients a fee of $70 per hour. Her practice earned a few thousand dollars in 1995.

33. As a result of the defendant's abuse, the plaintiff is fearful of placing her children in a day care program. Her ability to see clients is therefore limited to evenings when her husband is home to care for the children. If she were comfortable putting her children in day care, she would likely carry an average caseload of twenty to thirty clients and substantially increase her earnings.

### E. The Impact of the Abusive Relationship on the Personal, Family and Religious Aspects of Janet Walker's Life

34. Janet Walker continues to suffer negative effects of the defendant's abuse.

35. As a result of the defendant's abuse, Janet Walker has difficulty trusting others and establishing friendships. She is very guarded and anxious.

36. A couple of times a month, she is troubled by nightmares in which she dreams that she is locked in a building with the defendant and trying to escape him.

37. Janet has difficulty with sexual intimacy in that, on about four to six occasions a month, she does not want her husband to be physically close to her.

38. Janet Walker is overprotective of her children. Other than her mother, there are only two people, both of whom have limited availability, whom she will hire to babysit. As a result, the plaintiffs sometimes go three months without going out as a couple, thereby causing stress in the marriage.

39. Janet Walker's refusal to send her children to day care results in her seeing clients in the evenings, and she and her husband therefore do not have as much time together as they would enjoy.

40. Janet Walker's reluctance to send her children to day care also limits Robert Walker's ability to market his law practice. In order to be home in the evening to watch the children while Janet Walker sees her clients, Robert Walker has curtailed his professional and community-oriented activities, which in turn has a negative impact on the growth of his law practice.

41. The defendant's abuse affected Janet Walker's involvement with the church. When in the midst of the relationship, the plaintiff's involvement with the defendant increased her activities in the church. When she began to work through issues concerning the abuse, she had difficulty respecting the clergy and sitting as a member of a congregation. Despite a very religious upbringing, she no longer attends church and is not raising her children in an organized religion.

42. Ten years after the abusive relationship between the defendant and Janet Walker ended, Janet Walker confronted the defendant in an attempt to settle matters that she felt remained unresolved. She wanted him to know that what he had done was wrong. She wanted him to know the negative impact he had had on her life. The conversation between the plaintiff and the defendant was interrupted. Despite the plaintiff having told the defendant that she wanted to resume the conversation at another time, the conversation was never completed. The plaintiff wanted an apology, but she did not get one. The defendant expressed no remorse.

### F. Therapy Expenses

43. Janet Walker met with her therapist, Kenneth Sleight, for three hundred sessions from January 1, 1984 until January 10, 1991. She paid $14,125 for her therapy with Mr. Sleight.

44. Janet Walker has received professional counseling from several psychotherapists other than Kenneth Sleight since she graduated from high school, but she has no records regarding past therapy expenditures other than the affidavit of Mr. Sleight.

### G. Expenses of Litigation

45. The plaintiffs have retained counsel pursuant to a contingent fee agreement whereby the plaintiffs' legal fees will be equal to 33.3% of any recovery, exclusive of costs.[1]

46. The plaintiffs have incurred legal costs in the amount of $691.68,[2] all of which are taxable costs.

---

1. Connecticut's statutory limitation on contingency fees does not apply to the contingency fee agreement in this case, where the injury occurred prior to October 1, 1987. *See* Conn.Gen.Stat. § 52–251c.

2. In support of the plaintiff's claim for costs, plaintiff has submitted an Affidavit of Legal Fees and Costs executed by plaintiff's attorney, Holly Abery–Wetstone. An accounting of Attorney Wetstone's legal billing and costs, which is an exhibit attached to the affidavit, shows total costs to be $891.68. The itemization of costs, howev-

## III. CONCLUSIONS OF LAW

1. Having been defaulted, the defendant is liable to the plaintiff Janet Walker on her claims of negligent assault, intentional assault, negligent infliction of emotional distress, and intentional infliction of emotional distress. The defendant is also liable, by default, on the plaintiff Robert G. Walker's claim for loss of consortium.

■ 2. The plaintiff Janet Walker is entitled to compensatory damages for the pain and suffering and emotional distress that the defendant inflicted upon her. She is also entitled to compensatory damages for the loss of earnings she sustained by deferring the start and limiting the extent of her psychotherapy practice as a result of the defendant's conduct, and the therapy expenses she has incurred as a result of the defendant's conduct.

■ 3. The plaintiff Robert G. Walker is not entitled to compensatory damages on his claim of loss of consortium because he was not married to Janet Walker at the time of the actionable conduct. *Gurliacci v. Mayer*, 590 A.2d 914, 218 Conn. 531, 564 (1991) (a cause of action for loss of consortium does not exist where the injury occurred prior to the marriage of the parties).

■ 4. The plaintiff Janet Walker is entitled to punitive damages on her claims of intentional assault and intentional infliction of emotional distress because the evidence before the court shows that the defendant's conduct was outrageous and the defendant was at least recklessly indifferent to Janet Walker's rights. *See Clute v. Davenport Co.*, 584 F.Supp. 1562 (D.Conn.1984) (under Connecticut law, punitive damages may be awarded when the evidence shows reckless indifference to the rights of others or intentional and wanton violation of those rights); *Ames v. Sears, Roebuck and Co.*, 514 A.2d 352, 8 Conn.App. 642, *cert. denied*, 515 A.2d 378, 201 Conn. 809 (1986) (punitive damages may be awarded for outrageous conduct).

■ 5. Because the purpose of punitive damages under Connecticut law is to compensate the plaintiff for her injuries, *Clute v. Davenport Co.*, 584 F.Supp. 1562 (D.Conn. 1984), the amount of punitive damages that the plaintiff is permitted to recover is limited to the plaintiff's expenses of litigation less taxable costs. *National Semiconductor Corp. v. Allendale Mut. Ins. Co.*, 549 F.Supp. 1195 (D.Conn.1982).

6. The plaintiffs have offered no legal or factual basis to support their claim for prejudgment interest. The claim for prejudgment interest is therefore denied.

## IV. CONCLUSION

Based on the foregoing proposed findings of fact and conclusions of law, the court recommends the following:

1. that judgment enter against the defendant on the plaintiffs' claims of negligent assault, intentional assault, negligent infliction of emotional distress, intentional infliction of emotional distress and loss of consortium;

2. that the plaintiff Janet Walker be awarded compensatory damages in the amount of $750,000;

3. that the plaintiff Robert G. Walker be awarded no compensatory damages;

4. that the plaintiff Janet Walker be awarded punitive damages in the amount of $374,437.75; and

5. that the plaintiffs be awarded costs of suit.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992)(failure to file timely objection

---

er, shows that $150.00 was incurred for a filing fee in the Superior Court on April 28, 1994 and $50.00 was incurred for a sheriff's fee on April 2,

1994. Because these costs were not incurred in connection with this federal action, they are not recoverable as legal expenses in this action.

to Magistrate Judge's recommended ruling waives further review of the ruling).

Feb. 11, 1997.

