[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, Susan G. Ricci, has filed a complaint against the defendants, Vision Financial Group, LLC (Vision Financial), and Washington Mutual Bank, F.A. (Washington Mutual). Count one alleges that on September 28, 1998, the plaintiff contacted Walter O'Connell, an agent or employee of Vision Financial, and began the process of obtaining a mortgage loan to finance the purchase of property in Greenwich, Connecticut. Vision Financial is a limited liability company and is a licensed mortgage broker in this state. The plaintiff informed O'Connell that the closing of the purchase was on November 12, 1998. O'Connell orally assured the plaintiff that based on her financial situation and personal data, the mortgage was "guaranteed" and Vision Financial could obtain a mortgage loan commitment and close on November 12, 1998, "without question."
The plaintiff completed the mortgage loan application and sent additional financial information to O'Connell on October 6, 1998. Her application and other financial information were not reviewed until the end of October, 1998, and the plaintiff believes that they were not submitted until after October 26, 1998. Moreover, Vision Financial submitted the plaintiff's documentation to its lending source as a "no-income verification" mortgage loan application. Due to Vision Financial's delay in processing the loan application, the plaintiff was forced to change the closing date from November 12, 1998, to November 20, 1998. Also because of the delay, the plaintiff's attorneys were compelled to have direct contact with Vision Financial's lending source, Washington Mutual, on October 15, 1998, in order to insure that the loan would be executed before the closing date of November 20, 1998.
On November 16, 1998, Washington Mutual, a federally chartered savings bank authorized to transact business in Connecticut, issued a mortgage loan commitment to the plaintiff and notified her that the loan could CT Page 6174 close on any day thereafter. On this same day, the plaintiff's attorneys notified Washington Mutual that the closing of the purchase of the property was scheduled for 10 a.m. on Friday, November 20, 1998, in Greenwich, Connecticut. The plaintiff's attorneys requested that Washington Mutual send the mortgage loan proceeds by wire into the attorneys' escrow account in sufficient time for the funds to be available for the closing. The plaintiff's attorneys also requested that Washington Mutual advise them on November 17, 1998, that all the paperwork was complete and that the mortgage loan would be ready to close on November 20, 1998.
On November 17, 1998, Washington Mutual's processing department notified the plaintiff's attorneys that the mortgage loan was ready to be closed. Also on this day, Attorney William J. Collier, one of the plaintiff's attorneys, spoke with Laura Hall, an agent or employee of Washington Mutual, regarding the closing. Attorney Collier stressed to Hall that the mortgage proceeds must be wired into his firm's escrow account on November 19, 1998, or no later than 9 a.m. Eastern Standard Time (EST) on November 20, 1998, in order for the funds to be available for the closing. Hall assured him that the loan proceeds would be available prior to the 10 a.m. closing.
On November 18, 1998, Attorney Collier called Hall twice regarding the status of the loan proceeds and repeated the importance of receiving the funds before the 10 a.m. closing on November 20, 1998. On November 19, 1998, Hall advised Attorney Collier that the funds would most likely be wired to his firm's escrow account on the morning of November 20, 1998. Again, Attorney Collier advised Hall of the closing time and that the funds had to be received no later than 9 a.m. EST the next day. He also advised Hall of the three-hour time difference.
On November 20, 1998, the plaintiff and her attorneys were present at the scheduled place and time for the closing of the purchase of the property, but the mortgage loan proceeds were not in their possession because the funds were not wired into the attorneys' escrow account. The proceeds were later wired into the escrow account at 12:37 p.m. EST, which was later than needed and in direct contravention to the discussions between Hall and Attorney Collier. As a result of Vision Financial and Washington Mutual's failure to make the mortgage loan proceeds available to the plaintiff at the time of the closing, the plaintiff was forced to obtain other monies to satisfy the purchase price of the property in order to avoid being in default of the contract for the purchase of the property.
In addition to the foregoing allegations, count one further alleges that the acts and conduct of Vision Financial, Washington Mutual and the CT Page 6175 employees of both organizations were committed without legal or social justification and with malice, insult and in reckless and wilful disregard of the plaintiff's rights. The plaintiff's rights include contractual rights to have her mortgage loan application processed in a timely and professional manner and to have the loan funded in a timely manner after it had been committed. By reason of the foregoing, the plaintiff has sustained and continues to sustain damages.
Count two incorporates all of the allegations of count one, adding that Vision Financial breached a duty of ordinary care owed to the plaintiff by negligently hiring O'Connell and allowing him to handle the plaintiff's loan application for a residential mortgage, and that this conduct was careless, negligent and reckless. Furthermore, the plaintiff alleges that Vision Financial acted wantonly, willfully and with reckless disregard to the contractual rights of the plaintiff.
Count three incorporates all of the allegations of counts one and two, and further alleges that Washington Mutual breached a duty of ordinary care owed to the plaintiff by negligently hiring Hall and allowing her to handle the plaintiff's application for a residential mortgage. The plaintiff alleges that Washington Mutual was careless, negligent and reckless in its hiring of Hall, its failure to properly train and supervise Hall in a skillful and prudent manner, and by its otherwise being negligent and reckless in the hiring, training and supervision of Hall and its employees. As a result of Washington Mutual's negligence, the plaintiff was forced to obtain monies to satisfy the purchase price of the property in order to avoid being in default of the contract for the sale of the property. The plaintiff alleges that the negligence of Washington Mutual was the proximate cause of the damages sustained by her, which she continues to sustain.
Count four incorporates all of the allegations of the first three counts but adds that the plaintiff relied, to her detriment, on the false and fraudulent representations made by O'Connell and Vision Financial, in which they stated that her mortgage was "guaranteed" and that Vision Financial would be able to meet the closing date of the loan "without question." The plaintiff alleges that the acts of O'Connell and Vision Financial were committed without legal or social justification and with malice, insult and in reckless and willful disregard of the rights of the plaintiff. Furthermore, the plaintiff alleges that the defendants engaged in unfair and deceptive trade practices in violation of General Statutes § 42-110g (a).
The prayer for relief, with respect to each count, seeks monetary damages (paragraph one), attorney's fees (paragraph two), punitive damages (paragraph three), interest (paragraph four), costs of suit CT Page 6176 (paragraph five) and such other relief as in law or equity may appertain (paragraph six).
Washington Mutual filed a motion to strike counts one and three of the complaint, and paragraphs two, three and five of the prayer for relief as to the first and third counts. It moves to strike count one on the ground that the plaintiff failed to allege legally sufficient facts to support her claim that Washington Mutual acted with malice, insult or with willful and reckless disregard of the plaintiff s rights. Washington Mutual argues that although the plaintiff may have been merely inconvenienced by not receiving the loan proceeds at exactly 10 a. m. on November 20, 1998, it never acted unreasonably or with an extreme departure from ordinary care because the proceeds were still provided to the plaintiff on the day of the closing with more than enough time remaining in the day for the parties to close the property. It takes the position that the plaintiff was never in danger of defaulting on the contract for the sale of the property.
Washington Mutual further moves that count three should be stricken because, in addition to the plaintiff's failure to allege legally sufficient facts to support a claim of reckless concerning the hiring, training and supervision of Hall and the bank's other employees, the plaintiff relies on the same facts in count three that support her claim for negligence to support her claim for recklessness. In addition, Washington Mutual argues that paragraphs two, three and five of the prayer for relief as to the first and third counts should be stricken because the plaintiff failed to set forth any statutory or contractual authorization permitting an award for attorney's fees or the costs of suit. Furthermore, Washington Mutual argues that the plaintiff failed to set for forth a legally sufficient claim for punitive damages because she did not plead sufficient facts to establish that Washington Mutual acted recklessly or with a willful disregard of the plaintiff's rights.
The plaintiff argues that Washington Mutual, through Hall, knew of the necessity of the plaintiff's receipt of the loan proceeds prior to 9:00 a.m. on the date of the closing, yet despite that knowledge and the knowledge of the three-hour time difference, and the consequences of a late wire, Washington Mutual wired the funds more than three hours late. Thus, the plaintiff argues that count one adequately alleges that Washington Mutual acted in reckless disregard of the plaintiff's rights.
With regard to count three, the plaintiff argues that the allegations that Washington Mutual acted recklessly in the supervision and training of Hall are sufficient because the third count incorporates by reference all of the allegations contained in count one. In particular, paragraphs seventeen through twenty of count one allege that despite the various CT Page 6177 phone calls made by Attorney Collier to Hall, stressing the importance of receipt of the proceeds by 9 a.m. EST on the date of the closing, the loan proceeds were not wired until 12:37 p.m. on the closing date. The plaintiff argues, therefore, that Washington Mutual was reckless in the supervision and training of Hall if Hall could not and did not understand Attorney Collier's instructions regarding the closing date and time, the three-hour time difference and the necessity of receiving the funds before the closing.
Lastly, the plaintiff argues that her prayer for relief seeking punitive damages is supported by count one, in which she sufficiently alleged that Washington Mutual acted with reckless disregard of her rights and that a court may award attorney's fees as a component of punitive damages.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In addition, "[a] motion to strike is the proper legal mechanism when a party wishes to contest the legal sufficiency . . . of a prayer for relief." Totino v. Zoning Board of Appeals,41 Conn. Sup. 398, 400, 578 A.2d 681 (1990). "Practice Book . . . §10-39 . . . allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." Pamela B. v. Ment,244 Conn. 296, 325, 709 A.2d 1089 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. "(Internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "[T]he court must accept as true the facts alleged in the complaint." Pamela B. v. Ment, supra, 325. "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) D'Amico v. Johnson,53 Conn. App. 855, 859, 733 A.2d 869 (1999). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp., supra, 580. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Pamela B. v. Ment, supra, 308.
"In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] CT Page 6178 is more than negligence, more than gross negligence." (Internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 415,715 A.2d 27 (1998). "The state of mind amounting to recklessness may be inferred from conduct." (Internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711 (1988). "[I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Internal quotation marks omitted.) Elliott v. Waterbury, supra, 415. It "must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." (Internal quotation marks omitted.) Dubay v. Irish, supra, 533. "It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Elliott v. Waterbury, supra, 415.
Recklessness "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39, 45, 492 A.2d 219 (1985). "One is guilty of reckless misconduct when knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." (Internal quotation marks omitted.) Brock v. Waldron, 127 Conn. 79, 84, 14 A.2d 713, (1940). "The character . . . of [reckless] actions [is] the intent to injure either actually entertained or to be implied from the conduct and circumstances. " Martin v. Disilvestro, Superior Court, judicial district of Middlesex at Middletown, Docket No. 79044 (March 31, 1999, Higgins, J.). Furthermore, "[t]o be legally sufficient, a count based on reckless and wanton misconduct must . . . allege some duty running from the defendant to the plaintiff." Sheiman v. Lafayette Bank Trust Co., supra, 46.
The motion to strike count one and the corresponding prayer for relief, only insofar as count one is directed against Washington Mutual, is granted. The plaintiff has not alleged sufficient facts to demonstrate that Washington Mutual's conduct was more than negligence or gross negligence. The plaintiff has not sufficiently alleged that Washington Mutual's actions rose to the level of reckless conduct because nowhere CT Page 6179 does she allege "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Elliott v. Waterbury, supra, 245 Conn. 415. Moreover, the plaintiff failed to sufficiently allege facts showing a "high degree of probability that substantial harm" would result due to Washington Mutual's conduct. (Internal quotation marks omitted.) Brock v. Waldron, supra, 127 Conn. 84.
The motion to strike count three is denied. The court notes that count three appears to allege claims for negligence and recklessness. Although the court finds that count three does not allege sufficient facts to support a claim for recklessness, count three sets forth allegations to support a claim for negligence, the sufficiency of which are not challenged by Washington Mutual in this motion to strike. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Pamela B. v. Ment, supra, 244 Conn. 308; see also McGuire-Kelley v. Sciuto, Superior Court, judicial district of New Haven at New Haven, Docket No. 428860 (October 1, 1999, Devlin, J.) (the court concluded that the complaint did not allege sufficient facts to support a claim for recklessness, yet denied the motion to strike because the facts supported a claim for negligence.)
In addition, the motion to strike paragraphs two, three and five of the prayer for prayer, with respect to count three, is granted. First, the motion to strike the plaintiff's request for punitive damages is granted because the allegations in count three do not rise to the level of recklessness and do not indicate that Washington Mutual's acts were outrageous or done with an evil motive. "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights." (Internal quotation marks omitted.) Champagne v. Raybestos-Manhattan, Inc.,212 Conn. 509, 532, 562 A.2d 1100 (1989). Furthermore, "[a]s a general rule, punitive damages may be awarded only for outrageous conduct. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the interests of others." (Citations omitted; internal quotation marks omitted.) Ames v. Sears, Roebuck Co., 8 Conn. App. 642, 655,514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986).
Second, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Attorney's fees may be awarded, however, as a component of punitive damages." (Citations omitted; internal quotation marks omitted.) Roman v. Johnson, 48 Conn. App. 498, 503,710 A.2d 186 (1998). Because the allegations set forth in count three do CT Page 6180 not support a claim for punitive damages and a contractual or statutory exception is not applicable, the motion to strike the plaintiff's request for attorney's fees and costs of suit is also granted.
Accordingly, insofar as counts one and three are directed against Washington Mutual:
The motion to strike count one is granted as is the motion to strike the corresponding prayer for relief. The motion to strike count three is denied; however, the motion to strike paragraphs two, three and five of the corresponding prayer for relief as to count three is granted.
So Ordered.
D'ANDREA, J.