[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' JOINT MOTION TO STRIKE (#119)
The defendants Amide Pharmaceuticals, Inc. (Amide) and Novartis Consumer Health, Inc. (Novartis) have filed a joint motion to strike counts two and four of the plaintiff's revised complaint dated July 2, 2002, and a portion of the plaintiff's prayer for relief seeking punitive damages, costs, attorney's fees, expenses and interest.
This case is one of several pending before the court in which the plaintiffs allege that they have suffered hemorrhagic stroke as a result of the ingestion of different phenylpropanolamine (PPA) products manufactured, distributed and/or sold by the defendants. In this case, the plaintiff alleges that the defendant, Amide, sold and/or distributed a certain prescription cold medication called Guiatex-LA®, which contained PPA; and that Novartis manufactured and/or distributed an over-the-counter decongestant or cough/cold drug called Tavist-D which contained PPA.
Count one is addressed to Amide under the Connecticut Products Liability Act, General Statutes § 52-572m et. seq. (PLA); count three proceeds under the CPLA against Novartis. Counts two and four are respectively addressed against Amide and Novartis under a claim of recklessness, seeking punitive damages pursuant to § 52-240b of the General Statutes.
Punitive damages are allowed by the CPLA at § 52-240b if the product-seller demonstrates reckless disregard for the safety of product users, consumers or others who are injured by the product. Ames v. SearsRoebuck Company, 8 Conn. App. 642, 654, 514 A.2d 642 (1986).
In Edwards v. Novartis Consumer Health et al, Superior Court Complex Litigation Docket, judicial district of Waterbury, Docket No. 167425 (July 15, 2002, McWeeny, J.), the court, citing Ames v. Sears RoebuckCT Page 14062 Company, supra, 8 Conn. App. 642, denied a motion by the defendant Arthur Drug Stores to strike the punitive damage claim under facts and argument similar to the motion filed in this case.
This joint motion to strike before the court was substantially briefed by the defendants in a supporting memorandum of law dated August 14, 2002, with the addition of a reply brief dated October 9, 2002.
At the hearing on the motion to strike, the plaintiff conceded that she is not alleging that Amide and Novartis intended to cause injuries to her, but that they acted with reckless disregard as to whether she would suffer a stroke, based on alleged information over a long period of time which would tend to show such a concern with ingestion of PPA. PPA, in approximately 1999, was withdrawn from the market. In the above-cited memorandum of decision in the Edwards v. Novartis case, this court found that: "The plaintiffs specifically allege reckless conduct by the defendants in continuing to manufacture and distribute a product, knowing that it was unsafe and dangerous to the product users, including the defendants' knowledge that the consumers could suffer strokes, including fatal strokes. The allegations are sufficient to allow the inclusion of the punitive damage claim."
Attorney Reed Slatas, counsel for Amide on its joint motion to strike, stated at oral argument on October 28, 2002, that recklessness sufficient to justify punitive damages requires specific intent to cause injury to the alleged victim. See transcript, pages 7-9, attached. When pressed by the court for authority for such a proposition, Attorney Slatas citedTriangle Sheetmetal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220
(1966), and Ames v. Sears Roebuck Company, supra, 8 Conn. App. 642.
Counsel's in-court assertions that these cases support his argument on the joint motion to strike constitute gross and egregious misstatements of law and the holdings of the cited authority. This is especially shocking when the defendants' briefs, in total, amount to twenty-seven (27) pages. The authority cited to the court in oral argument clearly was not read by Attorney Slatas.
In Triangle Sheetmetal, at the specific page cited by counsel,154 Conn. 128, the decision holds: "The Restatement declares that punitive damages may be awarded only for `outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' Restatement, 4 Torts § 908, comment (b)." Id. In Ames v. Sears Roebuck Company supra, 8 Conn. App. 654, the decision holds: "As a general matter, [p]unitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a CT Page 14063 reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Citations omitted; internal quotation marks omitted.) Further noting at 8 Conn. App. 655: "In a products liability action, [p]unitive damages may be awarded if the claimant proves that the harm suffered was a result of the product-seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." (Citations omitted; internal quotation marks omitted.) Id.
Counsel has grossly and egregiously misrepresented the law to this court. It is difficult to imagine how such behavior is consistent with a lawyer's ethical obligation under the Rules of Professional Conduct Rule 3.3. Candor toward the Tribunal. In lieu of referring this matter to the State Grievance Committee, Attorney Slatas is hereby fined $100.00 (one-hundred and 00/100 dollars) pursuant to General Statutes § 51-84.
The joint motion to strike (#119) is denied.
 ___________________, J. ROBERT F. McWEENY
7
1 incorporated in the recklessness Counts 2 and 4 against
2 both Amide and Novartis.
3 MR. SLATIS: Saying we were aware and didn't warn —
4 THE COURT: Concealed, they allege you concealed.
5 MR. SLATIS: Concealed, that doesn't go — that
6 doesn't go that extra step which is required to say that
7 we actually intended to injure somebody. They don't say
8 we concealed it for the purpose of injuring people, you
9 know, that — that we concealed it because we intended to
10 harm people. You know, it just says we concealed it.
11 THE COURT: I don't — I don't think recklessness CT Page 14064
12 requires, you know, intent to injure. It's disregard of
13 whether the consequences are injury. I mean, you know,
14 this is —
15 MR. SLATIS: Well, I have cited numerous cases that
16 say you actually have to have an intent to injure, and it
17 has to be by design, that the actions are wanton,
18 reckless, and malicious, and arise from those actions
19 that inflict injury intentionally or by design. And
20 that's what they're lacking.
21 They, you know, they're not going that extra step and
22 saying we actually intended to injure anybody. They're
23 just saying we did these horrible things, we kept things
24 secret.
25 THE COURT: Well, I think — you're not claiming they
26 intended to injure. I mean, what's your understanding of
27 reckless?
8
1 MR. CASEY: Well, that's not spelled out
2 specifically; we don't believe they intended to injure
3 anyone. But I think the standard isn't just that — as
4 Your Honor pointed out — it's not that we have to allege
5 that they intended to injure someone.
6 Our Supreme Court in the Raybestos Manhattan case CT Page 14065
7 said it's a reckless indifference to the rights of others
8 or an intentional or wanton violation of those rights.
9 It's not required that we allege an intentional decision
10 or choice to injure a plaintiff. It's as Your Honor
11 pointed out, a disregard.
12 THE COURT: What Supreme Court authority do you have
13 for the proposition that it requires intent, not
14 disregard? I mean, my understanding of reckless is that
15 it's not just intent to injure. I mean, you know, it's a
16 concept familiar in criminal law where, you know —
17 MR. SLATIS: Well, in Ames versus Sears Roebuck,
18 that's a Connecticut Appellate Court case, that's what
19 they say.
20 In Triangle Sheet Metal —
21 THE COURT: Are you saying that they specifically
22 address that distinction?
23 MR. SLATIS: Yes. Well, they — for instance, in
24 Triangle Sheet Metal Works, which is a Supreme Court
25 case, 154 Connecticut 116, on page 128 they say, the
26 flavor of the basic requirement to justify an award of CT Page 14066
27 punitive or exemplary damages has been repeatedly
9
1 described in terms of wanton and malicious injury, evil
2 motive, and violence. And that's a — that's a Supreme
3 Court case.
4 Then there's another case —
5 THE COURT: Well, I don't think that specifically
6 precludes reckless indifference. I mean, you know, evil
7 motive can be consistent with reckless indifference.
8 MR. CASEY: And I'd point out, Your Honor, in their
9 own brief in citing the Ames case they pull — the
10 defendants pull a quote that says, either because the
11 defendant's acts are done with evil motive or because
12 they are done with the reckless indifference of the
13 interests of others. And I think we clearly met that
14 pleading burden in our reckless counts.
15 THE COURT: Anything else?
16 MR. SLATIS: Just that I believe I've cited, you
17 know, case law across both the Supreme Court, the
18 Appellate Court, and lower level Courts that expressly
19 indicate, you know, that there has to be an intent to
20 injure, and I don't think that they met that in this
21 case.
22 THE COURT: Well, I mean, they concede that they're
23 not claiming intent to injure. It's just a question of CT Page 14067
24 legally is that required.
25 MR. SLATIS: Correct.
26 THE COURT: Mr. Edrich, anything you care to add?
27 MR. EDRICH: Not much, Your Honor. I mean, we've CT Page 14068