LAURIE L. AMES *v.* SEARS,
ROEBUCK AND COMPANY
(13208)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued December 1, 1987—decision released January 19, 1988

*Kirk D. Tavtigian, Jr.,* with whom, on the brief, were *Philip S. Walker* and *Steven M. Greenspan,* for the appellant (defendant).

*Frank N. Eppinger,* with whom, on the brief, was *Peter J. Bartinik,* for the appellee (plaintiff).

PETERS, C. J. This appeal entails an examination of the circumstances under which a judgment debtor, by use of a writ of audita querela, can obtain relief from a final judgment awarding monetary damages to a judgment creditor. The defendant, Sears, Roebuck and Company, filed its application for a writ of audita querela alleging that the plaintiff, Laurie L. Ames, was threatening to cause execution to issue on a judgment in her favor in the amount of $175,000. Because the plaintiff had earlier received a payment of $25,000 from other alleged tortfeasors, the defendant claimed that its postjudgment payment of $150,000 had fully paid and satisfied the outstanding judgment. The trial court, *Hurley, J.,* after a hearing, denied the defendant's application for the writ and ordered payment of the balance due on the judgment. The defendant has appealed. We find no error.

For the purposes of this appeal, the facts of the underlying litigation can be briefly summarized. On August 10, 1978, the plaintiff was seriously injured when she accidentally fell off a riding lawnmower. The

accident occurred on the property of Wallace and Gladys Nordstrom, who had bought the mower from the defendant. The Nordstroms paid the plaintiff $25,000 in return for a release that was executed in advance of the trial of the plaintiff's products liability action against the defendant. The products liability action was tried to a jury, which returned a plaintiff's verdict in the amount of $250,000, reduced to $175,000 because of a jury finding that the plaintiff's conduct had contributed 30 percent to the accident. The trial court, *Vasington, J.,* rendered a judgment in accordance with the jury's verdict. That judgment was subsequently appealed to, and affirmed by, the Appellate Court. *Ames* v. *Sears, Roebuck & Co.,* 8 Conn. App. 642, 514 A.2d 352 (1986). We denied a petition for certification. *Ames* v. *Sears, Roebuck & Co.,* 201 Conn. 809, 515 A.2d 378 (1986).

As Judge Hurley's memorandum of decision in the present proceedings attests, the issue of the pretrial release of the Nordstroms, and their payment of $25,000, was addressed at three different junctures in the trial of the underlying litigation. The defendant first sought, unsuccessfully, to amend its pleadings to file a special defense relating to the Nordstroms' settlement. The defendant then attempted, again unsuccessfully, to have the settlement admitted into evidence before the jury. Finally, the defendant relied on the settlement in its posttrial motions to have the verdict set aside and for a remittitur. The trial court, *Vasington, J.,* denied these motions.

In its appeal to the Appellate Court, the defendant challenged only one of these adverse rulings relating to the Nordstrom settlement. It contended that the settlement should have been put before the jury because the governing statute, General Statutes § 52-216a,[1]

---

[1] General Statutes § 52-216a, as amended to the date of trial in 1984, provided: "READING OF AGREEMENTS OR RELEASES TO JURY PROHIBITED.

unconstitutionally made an evidentiary distinction between a jury trial and a court trial. Because this constitutional claim had not been "distinctly raised at the trial"; Practice Book § 4185, the Appellate Court declined to consider it. *Ames* v. *Sears, Roebuck & Co.*, 8 Conn. App. 642, 649, 514 A.2d 352 (1986). The defendant's petition for certification raised no issue with regard to the Nordstrom settlement.

Subsequent to the Appellate Court decision, the defendant paid the plaintiff $150,000 and interest. When the plaintiff refused to discharge the judgment without a further payment of $25,000, the defendant filed the application for a writ of audita querela whose merits are presently before us. In its application, the defendant sought an adjudication that, in light of the $25,000 Nordstrom settlement, the plaintiff's judgment should be "declared to be wholly satisfied and discharged, and all proceedings under any writ of execution be stayed . . . ." The trial court, *Hurley, J.*,

ADJUSTMENTS FOR EXCESSIVE AND INADEQUATE VERDICTS PERMITTED. An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

For civil actions accruing on or after October 1, 1986, the governing statutes have been amended to require the reduction of a damages award in a personal injury or wrongful death action by amounts received from collateral sources, including joint tortfeasors. See General Statutes §§ 52-225a, 52-225b. These amendments are inapplicable in this case because the accident occurred on August 10, 1978.

denied the application on the ground that the relevant issues either had been resolved or should have been raised in the underlying proceedings. The defendant was accordingly ordered to pay the balance due on the judgment.

In the defendant's appeal from this judgment, it maintains that the trial court erred in refusing to apply the common law rule that amounts paid in settlement to a plaintiff by a joint tortfeasor must be credited against any judgment obtained by the plaintiff against other joint tortfeasors. *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 95, 92 A. 883 (1915). The plaintiff responds that such a claim of error may not be raised by a post-judgment writ of audita querela unless the defendant can show some matter of defense or discharge that postdates the judgment, and that the defendant in this case has failed to make the necessary showing. As did the trial court, we agree with the plaintiff.

The ancient writ of audita querela has been defined as "a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense (e.g., a release) arising, or at least raisable for the first time, after judgment." A. Leff, "The Leff Dictionary of Law: A Fragment," 94 Yale L.J. 1855, 2101 (1985); see also Black's Law Dictionary (5th Ed. 1979) p. 120; 7 J. Moore, Federal Practice (1987) § 60.13; E. Stephenson, Connecticut Civil Procedure (1981) § 209. Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him. *Wintle* v. *Wright,* 151 Me. 212, 213–14, 117 A.2d 68 (1955). "No authority has been cited to suggest that the writ of audita querela was ever available to present issues which were presented before the entry of the judgment attacked by the writ." *Ameri-*

*can National Bank & Trust Co.* v. *Pennsylvania R. R. Co.,* 40 Ill. 2d 186, 193, 238 N.E.2d 385 (1968). "The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which should cause discharge of a judgment debtor." *Lapin* v. *Shulton, Inc.,* 333 F.2d 169, 171 (9th Cir.), cert. denied, 379 U.S. 904, 85 S. Ct. 193, 13 L. Ed. 2d 177 (1964).

The defendant has not challenged the proposition that a writ of audita querela depends upon a showing of "new matter in defense . . . arising, or at least raisable for the first time, after judgment." A. Leff, supra. Although the defendant has not fully articulated the grounds for its alleged right to audita querela relief, it appears to be proffering two separate reasons why it has properly invoked the writ. First, the defendant maintains that its postjudgment payment of $150,000, and the plaintiff's subsequent insistence that another $25,000 was due and owing, for the first time made it possible to raise the issue of whether the defendant's payment would constitute full satisfaction of the plaintiff's judgment. Second, the defendant claims that it was precluded from an earlier appellate challenge of the relationship of the Nordstrom settlement to the trial court's denial of its posttrial motions for a remittitur or to have the judgment set aside, because of its justifiable reliance on a judicial construction of § 52-216a that was subsequently changed. Although we find neither of these arguments to be persuasive, they warrant separate consideration.

The defendant's argument that its postjudgment payment of $150,000 triggered a right to invoke audita querela is based on its claim that the $25,000 Nordstrom settlement, as a matter of law, constituted partial satisfaction of the outstanding judgment of $175,000. Whether that statement of law is sound is not, in our view, an issue that first arose at the time when the

defendant made its payment of $150,000. As previously noted, that issue was in fact raised in the underlying trial proceedings, and could have been pursued in the appeal to the Appellate Court. The defendant has cited no authority for the proposition that audita querela lies to afford relief from a final judgment when the legal effect of a pretrial release was a litigated issue in the proceedings that resulted in the disputed judgment. Such a proposition would be inconsistent with the principles of public policy that underlie our rules of res judicata, where we have emphasized that "a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983); *Duhaime v. American Reserve Life Ins. Co.*, 200 Conn. 360, 363-64, 511 A.2d 333 (1986); *Corey v. Avco-Lycoming Division*, 163 Conn. 309, 316-17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). "[T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.2, p. 590.

The defendant's alternate argument is that its attempts to litigate the effect of the Nordstrom settlement were unfairly hampered by its reliance on a judicial interpretation of the relevant statute, § 52-216a, that this court has subsequently changed. At the time of the trial in this case, this court had construed § 52-216a to direct a trial court to consider a pretrial release "[i]n making its postverdict determination on the issue of any claimed excessiveness or inadequacy" in the amount of damages awarded to a plaintiff. *Peck v. Jacquemin*, 196 Conn. 53, 71, 491 A.2d 1043 (1985). The defendant claims that it relied on *Peck* when it decided not to pursue in the Appellate Court the merits of the trial court's denial of its posttrial motions addressed to the amount it had been ordered to pay

the plaintiff. Thereafter, in the unrelated case of *Alfano* v. *Insurance Center of Torrington*, 203 Conn. 607, 611, 525 A.2d 1338 (1987), we affirmed a trial court's order of remittitur when we concluded that, in the circumstances of that case, an out-of-court settlement made a jury award excessive as a matter of law. The defendant maintains that, in this case as well, an award of compensation to the plaintiff will be "excessive as a matter of law" unless the jury verdict is reduced to reflect the amount of the Nordstrom settlement.

We need not decide today whether the defendant is correct in its application of the principles of *Alfano* and *Peck* to the circumstances of this case. This matter does not come to us on direct appeal from the judgment rendered by Judge Vasington. The question before us is whether, even if there has been a change in the legal principles governing pretrial settlements, such a change entitles a judgment debtor to posttrial relief in audita querela. We conclude it does not.

The parties have cited no case, nor have we been able to find one, in which this question has been addressed with respect to the writ of audita querela. In the federal courts, audita querela has been superseded by the provisions of Rule 60 (b)[2] of the Federal Rules of Civil Procedure. Numerous federal cases decided pursuant

[2] Rule 60 of the Federal Rules of Civil Procedure provides in relevant part: "Relief from Judgment or Order . . . .

"(b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, ETC. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons; (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from

to Rule 60 (b) have expressly held that postjudgment relief is not warranted merely because the law applied by a court has subsequently been overruled or declared erroneous in another, unrelated, proceeding. *Travelers Indemnity Co.* v. *Sarkisian,* 794 F.2d 754, 757 (2d Cir.), cert. denied, 479 U.S. 885, 107 S. Ct. 277, 93 L. Ed. 2d 253 (1986); *McKnight* v. *United States Steel Corporation,* 726 F.2d 333, 338 (7th Cir. 1984); *E.E.O.C.* v. *Safeway Stores, Inc.,* 611 F.2d 795, 799–800 (10th Cir. 1979), cert. denied sub nom. *Courtwright* v. *E.E.O.C.,* 446 U.S. 952, 100 S. Ct. 2918, 64 L. Ed. 2d 809 (1980); *Marshall* v. *Board of Education,* 575 F.2d 417, 424 (3d Cir. 1978); *Coalition of Black Leadership* v. *Cianci,* 570 F.2d 12, 16 (1st Cir. 1978); *Title* v. *United States,* 263 F.2d 28, 31 (9th Cir.), cert. denied, 359 U.S. 989, 79 S. Ct. 1118, 3 L. Ed. 2d 978, reh. denied, 360 U.S. 914, 79 S. Ct. 1292, 3 L. Ed. 2d 1263 (1959); *Berryhill* v. *United States,* 199 F.2d 217, 219 (6th Cir. 1952); and see 7 J. Moore, Federal Practice (1987) § 60.26 [3], p. 60-248; 11 C. Wright & A. Miller, Federal Practice and Procedure (1973) § 2863, p. 203; F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 12.14, pp. 679–80.[3] These authorities concur in the view expressed by the Supreme Court of the United States in a related context: "Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hind-

---

the operation of the judgment. . . . Writs of . . . audita querela are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

[3] There may well be different considerations when the question is not relief from a monetary judgment but modification of the terms of an injunction governing future conduct. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 12.14, p. 680; 2 Restatement (Second), Judgments (1982) § 73, comment c.

sight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the [subsequent] case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann* v. *United States,* 340 U.S. 193, 198, 71 S. Ct. 209, 95 L. Ed. 207 (1950). We agree. *Monroe* v. *Monroe,* 177 Conn. 173, 177–78, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).

There is no error.

In this opinion the other justices concurred.

