[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this summary process action, plaintiff claims that on or about July 1, 1995, it entered into a written lease for the term of one year with defendant, Richard Harl and Angela Geary.[1] The complaint lists the leased premises as Pleasant Valley Mobile Home Park, 55 Walker Hill Road, Lot 33, Groton, Connecticut.
Under the terms of the lease, it is alleged that defendant agreed to pay a monthly rental of $375 on the first of each month and that he took possession and still occupies the premises. CT Page 5530
The complaint further alleges that defendant failed to pay the rent due under the lease for September 1, 1996, and that on November 14, 1996, plaintiff caused a notice to quit possession to be served on the defendant, to vacate the premises on or before December 16, 1996. Defendant has not done so and remains in possession.
The notice to quit contains the same address as set forth in the complaint.
On February 7, 1997, a default judgment was entered. Subsequently, on March 5, 1997, an execution was issued and served on March 24, 1997. No eviction took place under authority of this execution. On April 21, 1997, a second execution was issued. On April 25, 1997, counsel appeared for defendant and a writ of audita querella was applied for. As a consequence of this request, the execution was stayed and the matter was scheduled for hearing on May 2, 1997.
The ancient writ of audita querella has been defined as "a writ issued to afford a remedy to a defendant against whom judgment has been rendered, but who has new matter in defense (e.g., a release) arising or at least raisable for the first time after judgment." "Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on the defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him." (Citations omitted.) Ames v. Sears Roebuck Company, 206 Conn. 16, 20
(1988).
"Audita querella is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition; (2) prior existing defenses that were not available to the judgment debtor in the original action; or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor has no control. Ballentine's Law Dictionary, 3rd Ed. 1969." Oakland Heights Mobile Park, Inc. v. Simon,40 Conn. App. 30, 32 (1995).
At the hearing, defendant attempted to raise a number of prior existing defenses which were available and could have CT Page 5531 been raised if defendant appeared and defended the action. Defendant has not briefed these issues and they will be considered abandoned.
A claim of lack of subject matter jurisdiction was raised, and although not briefed, should be addressed. The evidence pointed out a discrepancy between the street address of the mobile home park as used by the tax assessor and that used in the notice to quit and the complaint. From the evidence, it is concluded that the address used on the notice to quit and the complaint is appropriate. The park is bordered by more than one street and although Walker Hill Road is not used by the tax assessor it is used as a street address by others who reside and work on the premises. There was no question raised as to the description of the park or the lot number. These items constitute the essential designation of the premises and should assure proper notice and identification of the leased premises.
It must be concluded that the notice to quit was adequate and that defendant has failed to establish that service was defective. It is found that proper abode service was made. Standard Tallow Corporation v. Jowdy, 190 Conn. 48,53 (1983).
In seeking the writ of audita querella, defendant's principal claim is that on or about March 21, 1997, after he was notified that an execution had been issued, the parties entered into a binding stipulation which would be presented to the court to stay the execution and resolve the action.
The evidence indicates that at the time defendant was not represented by an attorney and on or about March 22, 1997, defendant's mother entered into negotiations, on his behalf, with plaintiff's attorney.
Pursuant to these negotiations, a draft stipulation was prepared. This draft provided for a stay of execution through April 30, 1997, and contained six conditions.
The first two conditions recognized a debt owed to plaintiff in the amount of $3,568.75 and provided for payment of $2,400 on April 24, 1997, with the balance to be paid by April 30, 1997. CT Page 5532
Other provisions covered attorney's fees, payment of town taxes by defendant and a provision that only people listed in the prior lease were to reside in the trailer. The stipulation also provided that upon completion of the payments, a new lease would be entered into with defendant's mother guaranteeing payment. There was a requirement that the lessee should file an application and pay for a credit check and pay two months security in advance.
Plaintiff's manager rejected the stipulation and insisted on four additional conditions and a modification to the second paragraph requiring payment of the balance by May 30, 1997. This was to include the May, 1997 rent.
The additional conditions are significant. The seventh and eighth conditions provided:
 "7. No one in trailer except those authorized by prior lease during interim — or execution will be immediate.
 8. If police called to property for any complaint — execution will be immediate."
The ninth condition covered a late charge in the event the full rent was not paid in May.
The tenth and eleventh conditions were as follows:
 "10. Application to be completed and filled out within 5 days.
 11. Failure to comply with any of the terms of this agreement will result in immediate execution."
The revised stipulation was executed by all parties March 26, 1997.
From the evidence, it must be concluded that defendant was not considered by plaintiff as a reliable tenant. His ability to pay the rent was questioned to the extent that his mother was required to guarantee payment of all future rents and costs. There was also concern about illegal use of the premises and police involvement as well as unauthorized persons living on the premises. CT Page 5533
Plaintiff's concern is reflected in the number of times the warning that failure to comply with the terms of the stipulation would result in immediate execution is found in the stipulation. It is clear that entering of the stipulation was conditioned upon compliance with its terms.
Although the $2,400 was paid as agreed, it is undisputed that all the terms of the stipulation have not been complied with.
Taxes have not been paid to the town of Groton as required and no application for credit approval has ever been filed. There was no evidence from defendant concerning noncompliance, but his mother testified that she was under the impression that they had until May 30, 1997 to comply with these terms. This does not appear to be reasonable. Paragraph ten of the stipulation required compliance within five days. It is unrealistic to assume that compliance would be delayed until the end of the stay period.
It is also found that an older man, not authorized by the lease, was living on the premises in violation of the stipulation and that the police had been called to the premises.
In seeking the writ of audita querella defendant emphasizes the fact that $2,900 in back rent was paid and small claims judgments exist against defendant. There is no great equitable significance in this since defendant owes more than the amount paid and he has his remedy if the small claims judgments exceed the balance owed on such debt.
Considering all of the evidence and the equitable factors, the writ of audita querella must be denied.
However, considering all of the equitable issues involved and being mindful of the problems involved in the removal of a mobile home equity does require a reasonable stay of execution.
Accordingly, execution is stayed until July 30, 1997, provided that defendant pay all arrearages for past rent and use and occupancy by May 30, 1997, and future use and occupancy at the rate of $375 per month on the first day of each month CT Page 5534 during the period of the stay.
Purtill, J.