[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Carl Cohen obtained a judgment for money damages against the defendants MBA Financial Corporation and John Folger on January 30, 1996. In March of 1999, over three years later, the individual defendant John Folger filed a motion for a writ of audita querela, and a motion to open the judgment. He claims that the entry of judgment against him, jointly and severally with the corporate defendant, for $56,477.18 plus costs was the result of an error by the court. He further claims that this error was partly induced by the failure of plaintiff's counsel to call to the court's attention the precise allegations in the complaint on which the judgment was based.
The facts are these. The plaintiff Carl Cohen caused a complaint to be served on the corporate defendant and the individual defendant on October 9, 1995. The complaint was in eight counts. Count I, against the corporation only, alleged that the defendant MBA Financial Corporation had breached a contract to reimburse the plaintiff for services rendered and for expenses paid on behalf of the corporation totaling $14,977.18. Count II realleged the same facts but claimed unjust enrichment as the legal theory. Count III realleged the same facts, but sounded in quantum meruit. Count IV alleged that the plaintiff had lent an additional $40,000 to MBA Financial Corporation and had not been repaid. Count V realleged the same facts as Count IV and claimed unjust enrichment.
Counts VI and VII are the only counts that mention the defendant John Folger. These counts allege that the plaintiff had lent John Folger $1500 and that the loan had not been repaid. Pleading two alternative legal theories, the plaintiff claimed damages of $1500. CT Page 8771
In Count VIII against the corporation only, the plaintiff alleged that the conduct of the corporation violated the Connecticut Unfair Trade Practices Act.
The complaint contains no allegation that John Folger was in any way connected to MBA Financial Corporation.
Despite proper service of the complaint on both the corporate and individual defendants, the defendants did not appear and were defaulted. At a hearing in damages tried to the court, the plaintiff testified that John Folger was the president of the corporation. Then the following colloquy took place between the court and plaintiff's counsel:
 The Court: What are you claiming? Are you claiming that the money to Folger was to the corporation also?
 Mr. DePaola: The loans, and in Counts Five and Six are — the loan in five and six and seven are against the individual defendant. Counts Four and —
 The Court: I'm not saying they are not against the individual defendant; I'm asking you, are you claiming that this money was used for the corporation purposes?
Mr. DePaola: The loans?
The Court: Yes.
 Mr. DePaola: For both purposes, yes, personal and corporation.
The Court: Judgment can go against both of them.
Mr. DePaola: Yes, sir.
The Court: That's what you're asking for?
Mr. DePaola: Yes, sir.
The Court: Let's go.
The testimony of the plaintiff proceeded, and the underlying documents evidencing the debt of the corporation to the plaintiff CT Page 8772 were received as exhibits. At the conclusion of the evidence, the court again inquired of plaintiff's counsel about how the judgment should be entered.
The Court: All right, counselor. Did you add these up?
Mr. DePaola: Yes, Judge, I did.
The Court: What do you get?
Mr. DePaola: It comes to $56,477.18.
 The Court: And that's what you're seeking against both defendants?
Mr. DePaola: Yes, sir, it is.
 The Court: Judgment may enter in favor of the plaintiff and against the defendant, the defendants, plural, both defendants in the total amount of $56,477.18.
It is clear that the court (Mulvey, J.) was originally asking whether the loan to Mr. Folger was used for corporate purposes, perhaps for an understanding of whether the debt of Mr. Folger — the $1500 — was included as part of the corporate debt. Counsel for plaintiff, whether intentionally or unintentionally, allowed the court to conclude that the reverse was true, that the entire debt of the corporation should be included as part of Mr. Folger's debt. Counsel knew full well at the time that there was no claim in the complaint for any amount of money other than $1500 against Mr. Folger. Nonetheless counsel helped create the impression in the judge's mind that there was both a claim for a greater amount and evidence to support it. Neither was true.
The writ of audita querela is issued to afford a remedy to one against whom a judgment has been entered, but who has new matter in defense arising, or at least raisable for the first time, after judgment. Ames v. Sears, Roebuck Co., 206 Conn. 16,20 (1988). Reference to the writ is made most frequently in cases where payment has been made after the judgment or where subsequent protection of the bankruptcy court has been invoked.
A motion to open the judgment is the usual vehicle to correct a "judicial" error as opposed to a "clerical" error in the entry of a judgment. Stephenson, Connecticut Civil Procedure § 207, p. CT Page 8773 854 (2d Ed. 1981). A typical example, according to Stephenson, is that of a court that has "mistakenly rendered judgment in excess of its jurisdiction or for more than the amount of the ad damnum
when the defendant defaults." Id. Here the entry of judgment against John Folger for more than $1500 plus costs was just such a mistake, which should have been discovered by him and addressed promptly after the judgment was entered.
The defendant has complicated the problem that now confronts the court by failing to raise the issue in a timely manner. A notice of judgment was mailed out by plaintiff's counsel on February 2, 1996. Thereafter the plaintiff's current counsel, who did not represent him at trial, served a notice of examination of judgment debtor on the defendant summoning the defendant to appear at court for such a hearing on November 16, 1998. The defendant did not appear, and the court entered a capias with an appearance bond of $2000, cash or surety. The defendant thereafter obtained counsel who appeared with the defendant and who filed the motions that are the subject of this proceeding.
At the hearing on the motion for writ of audita querela and the motion to open the judgment, the defendant did not dispute that he received notice of the judgment in 1996, but claims he failed to appreciate its significance, given the facts about which he was reasonably on notice, namely that his personal exposure in the underlying case was for $1500 plus court costs. The plaintiff defends by trumpeting the doctrine of finality of judgments and the undisputed fact that the defendant received notice of the entry of this judgment three years ago and did nothing about it.
One of the leading cases[1] on equity jurisprudence recognizes this general rule, but also expounds on its exception.Bateman v. Willoe, 1 Schoales L. (Ir.) 201, (Chancery Court, 1803). The plaintiff, Bateman, who was involved in a number of lawsuits, retained Willoe as his attorney. When there was a disagreement about the fees Willoe charged, the two men decided to utilize alternative dispute resolution (this in 1799!) and referred the matter for private arbitration before a panel of two gentlemen of the bar, who rendered an award, which Bateman paid. A second round of arbitration for other disputed fees was not as successful, and Willoe then sued for the remaining unpaid bills. He obtained a verdict by default for £ 299. Bateman unsuccessfully attempted to open the judgment, and then filed an action in equity alleging, among other things, that Willoe had agreed to CT Page 8774 forebear as to some of the bills on which he sued as a result of the prompt payment by Bateman of the previous arbitration award.
Lord Redesdale, assuming arguendo that an injustice had been done to Bateman, found that "it is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. . . . [I]t is more important that an end should be put to litigation than that justice should be done in every case; the truth is, that, owing to the inattention of parties and several other causes, exact justice can very seldom be done." Id., 204. Admitting of an exception, such a situation warranting interference would exist, for example, "where a verdict has been obtained by fraud, or where a party has possessed himself improperly of something, by means of which he has an unconscientious advantage at law, which equity either will put out of the way or restrain him from using."
Nonetheless, finding that Bateman could have raised every issue in the Court of Exchequer (the court that rendered the verdict) that he now raised in equity in the High Court of Chancery, and that no other circumstances existed to warrant interference, Lord Redesdale dismissed the case.
Nor is equity jurisprudence a matter only for Irish courts of the 19th century. In considering Conn. Gen. Stat. § 52-212a, and the prohibition on opening a judgment after four month's time, the Supreme Court of Connecticut recently stated: "Our case law on that statute recognizes that, in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity." Kim v. Magnotta,249 Conn. 94, 109 (1999). In this court's opinion, the instant case presents such a situation.
Modern law as embodied in the Restatement of Judgments, Second, § 68, also supports granting relief from the full effect of the judgment in this circumstance. That section provides:
 Subject to the limitations stated in § 74, a judgment by default may be avoided if the judgment . . . (3) [r]esulted from . . . a substantial mistake by the court.
The commentary to this section utilizes the following illustration:

CT Page 8775 5. P brings an action in contract against D alleging facts showing damages of $10,000 but with a prayer for $20,000. D defaults. The court enters judgment for $20,000 despite the absence of any factual basis for that amount of damages. D seeks to set aside the judgment on a showing that he supposed the judgment would be limited to $10,000. Relief should be granted to reduce the judgment to $10,000.
See, e.g., Columbia Valley Credit Exchange, Inc. v. Lampson,12 Wash. App. 952, 533 P.2d 152 (1975).
The entry of a judgment against the individual defendant in an amount far in excess of that alleged in the complaint was a mistake that equity must be allowed to address. The defendant "slept on his rights" for a perilously long period of time, but the complicity of the plaintiff and counsel in allowing the court to enter judgment in an erroneous amount in the first place outweighs the defendant's belated assertion of his rights. The orders now entered by this court in granting equitable relief to the defendant are designed to ensure that the plaintiff suffers no hardship or prejudice. See, Restatement of Judgments, Second, § 74.
The defendant has satisfied the court that the entry of judgment in excess of the amount alleged in the counts of the complaint against him was a judicial error. This mistake is apparent on the record, upon a bare comparison of the complaint with the judgment.[2] There is nothing to suggest that the proceedings before Judge Mulvey were not otherwise proper in rendering a judgment against the defendant John Folger for the amount prayed for in the complaint.
The writ of audita querela shall issue, prohibiting the plaintiff from any further action to collect the judgment against John Folger individually in an amount greater than $1500 plus costs and statutory interest. The motion to open the judgment is granted and the court hereby reenters judgment as before revising that against John Folger only, to be in favor of the plaintiff in the amount of $1500, plus costs and statutory interest on that amount from the date of the original judgment.
It is so ordered.
Patty Jenkins Pittman, Judge CT Page 8776