[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION #140 MOTION TO REOPEN JUDGMENT
This matter concerns a foreclosure action filed by the plaintiff, Homeside Lending, Inc., against the defendants Marta and Amilcar Negron. The plaintiff alleges in its complaint that on or about October 18, 1996, the defendant, Marta Negron, executed and delivered to Barnett Mortgage Company d/b/a Loan America Financial Corporation (hereinafter "Barnett) a Note for a loan in the original amount of two hundred thousand, seven hundred dollars ($200,700.). On the same date the defendant Marta Negron executed and delivered to the Barnett a Mortgage on property known as 41 Hubbard Avenue, Stamford, Connecticut.
The subject Mortgage and the Note were eventually assigned to the plaintiff in the instant action. The plaintiff alleges that sometime after the execution of the Note and Mortgage, the defendant defaulted on said Note.
On February 16, 1999, the Court, Hickey, J. entered a judgment of Strict Foreclosure and set law days for April 20, 1999, et seq.[1]
Subsequent to this, the defendants filed a Motion to Reopen the Judgment to extend the law day. The Motion was granted by the Court and the Law Day was set for June 28, 1999. On June 29, 1999, the Judgment was again reopened and a September 18, 1999 law day was set. On September 8, 1999, the defendant Amilcar Negron, field a Chapter 7 Bankruptcy petition. The plaintiff filed a Relief from Stay and on October 20, 1999 the Bankruptcy Court granted said motion. The defendants once again sought to reopen the Judgment and said motion was granted on November 29, 1999 and a new law day was set for December 20, 1999. On December 21, 2000 the defendant Amilcar Negron once again filed for Chapter 7 Bankruptcy. On May 12, 2000, the bankruptcy case was converted to a Chapter 13 bankruptcy petition. Said petition was dismissed on February 22, 2001. The defendant once again filed a Motion to Reopen and said motion was granted an a new law day was set for July 9, 2001. The Court found the debt to be two CT Page 152 hundred seventy thousand six hundred five dollars and nineteen cents ($270,605.19). Title vested in the plaintiff on July 11, 2001.
On August 14, 2001, the defendants filed a Motion to Reopen Judgment and a Stay of Post Judgment Proceedings. The defendants assert that the Judgment should be reopened for the following reasons:
1) It was entered by reason of mistake.
 2) It should be reopened under the doctrine of Audita Querela.
Section 49-15 of the Connecticut General Statutes concerns opening judgment of foreclosures. This statute provides that:
 Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer.
Section 52-212a of the Connecticut General Statutes concerns the reopening of civil judgments in general. This statute provides that:
 Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed.
 The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (o) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court, provided the filing of an amended petition for termination of parental rights does not constitute a waiver of the provisions of this section or a submission to the CT Page 153 jurisdiction of the court to reopen a judgment terminating parental rights.
The plaintiff in this matter asserts that title vested in it on July 11, 2001, therefore pursuant to the provisions of Section 49-15, the judgment cannot be reopened because title became absolute in an encumbrancer.
The Moving parties state in their papers that they are primarily relying upon the doctrine of Audita Querela so the Court will concerned this argument first.
 "The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which should cause discharge of a judgment debtor." (citations ommitted)
Ames v. Sears, Roebuck Company, 206 Conn. 16, 21 (1988).
 "The ancient writ of audita querela has been defined as a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense (e.g., a release) arising, or at least raisable for the first time, after judgment. . . . Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him. . . . No authority has been cited to suggest that the writ of audita querela was ever available to present issues which were presented before the entry of the judgment attacked by the writ. . . . The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which should cause discharge of a judgment debtor. . . ." (Citations omitted; internal quotation marks omitted.) Ames v. Sears, Roebuck Company, 206 Conn. 16, 20-21, 536 A.2d 563 (1988).
 Anthony Julian RR Const. v. Mary Ellen Dr. Assoc., 50 Conn. App. 289,294 (1998).
 Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice CT Page 154 because of (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control. Ballentine's Law Dictionary (3d Ed. 1969).
 Oakland Heights Mobile Park, Inc. v. Simon, 40 Conn. App. 30, 32 (1995).
The moving parties in this matter assert that they are entitled to equitable relief in this matter for reason that. Subsequent to this action being filed against them, they hired the services of Attorney Andrew Mark Haynes (a/k/a Hanes or Haines). They further assert that shortly following the default that is the subject of this foreclosure action, the defendants attempted to tender to the plaintiff payment in the amount of the monthly obligation required to be paid by the Note, but the plaintiff refused to accept said payments, asserting that it had accelerated the debt and would not accept partial payments. As a result of the foregoing, the defendants commenced to pay Attorney Haynes the sum of approximately two thousand dollars ($2,000.) per month, which said attorney allegedly advised he as tendering to and paying to the plaintiff in reduction of the indebtness.[2]
Sometime, on or about October/November 2001, Attorney Haynes was suspended from the practice of law and a Trustee as appointed to attend all of his files. Despite the fact that Attorney Haynes had been suspended from the practice of law he continued to solicit from and receive payments from the defendants of approximately two thousand dollars ($2,000.) in November of 2000, one thousand nine hundred dollars ($1,900.) in December 2000, one thousand nine hundred dollars ($1,900.) in January 2001, one thousand nine hundred dollars ($1,900.) in February 2001, one thousand one hundred fifty dollars ($1,150.) in March 2001, one thousand four hundred seventy eight dollars and ninety eight cents ($1,478.98) in April or 2001, and one thousand four hundred ninety three dollars ($1,493.) and three hundred ($300.) in June of 2001. The defendants assert that they tendered between thirty five thousand dollars ($35,000.) and forty thousand dollars ($40,000.) to Attorney Haynes intended as a reduction of the indebtness, apparently none of which reached the plaintiff.
As was previously stated, the writ of audita querela may issue in favor of a defendant when the enforcement of a judgment would be contrary to justice because of: (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent CT Page 155 conduct or circumstances over which the judgment debtor had no control.Oakland Heights, Supra. At page 32. In the instant action, number (1) "matters arising subsequent to [the judgment's] rendition", does not apply. The defendants clearly assert in their motion that the actions of Attorney Haynes concerning the subject payments started taking placebefore judgment was entered and continued to occur after the judgment was entered. As to number (2) "prior existing defenses that were not available to the judgment debtor in the original action". The defendants have not cited any existing defenses that were available to them after the entry of judgment that were not available to them before judgment entered.[3] As to number (3) "the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control". The defendants do not allege that the plaintiff in this matter has acted fraudulently. Instead it is the actions of their own counsel that are at issue. The question then becomes are these "circumstances over which the judgment debtors had no control." This Court comes to the conclusion that the circumstances were not beyond the control of the judgment debtors.
On November 15, 2001 a hearing was held concerning the factual issues that were raised by the defendants concerning the request for equitable relief. During the hearing the court heard testimony from the defendants concerning their own actions, as well as the actions of their Attorney Haynes and Attorney Sharon Friday, the counsel who became the trustee of Mr. Haynes cases when he his privilege to practice law in the state of Connecticut was suspended. It became clear to the court that even after the defendants were alerted as to Attorney Haynes' legal problems, and being given advice by Attorney Friday to seek other counsel, the defendant's chose to continue to deal with attorney Haynes. The defendants now seek to shift the burden of their alleged loss onto the plaintiff in this action despite this fact.
The defendants are now before this court seeking equitable relief. There are at least two equitable maxims that are applicable to this situation
 ("[O]ne who seeks equity must also do equity and expect that equity will be done for all" [internal quotation marks omitted]).
 Thompson v. Orcutt, 257 Conn. 301, 318 (2001).
 . . . [A] loss ought to fall on the person who caused it. Home Ins. Co. v. Aetna Lfe Casualty Co., 35 Conn. App. 94, 104, 644 A.2d 933 (1994).
 Mojica v. Benjamin, 64 Conn. App. 359, 367 (2001). CT Page 156
This court comes to the conclusion that the most equitable solution in this matter is to deny the defendants the equitable relief that they seek. The plaintiff bore no responsibility for the actions or inactions of Attorney Haynes. Furthermore, the defendants' own actions and inactions of continuing their relationship with Attorney Haynes after receiving information concerning his status contributed to their situation and the plaintiff should not be required to bear the burden of the alleged loss. The motion to reopen the judgment is denied.
So ordered.
Richard A. Robinson, J.