[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINAL RULING ON POST-JUDGEMENT OBJECTIONS
This action, having a return date of September 2, 1997, was instituted by the plaintiff Michael Montanaro seeking to partition property owned by him and the defendant (Gail Gorelick The action sought to partition two parcels, one located on Old Town Road in Bridgeport, Connecticut ("Bridgeport property") and the other located on Lantern Park Lane North in Southbury, Connecticut ("Southbury property").[1] The court initially entered an order of Judgment by Partition on August 4, 1999. However, in July 2000, after lengthy and contentious proceedings regarding compliance with the court's order of partition, the parties entered into a "Stipulation For Settlement of Partition Action." This stipulation resolved existing disputes between the parties and set forth the terms for the sale of the parcels and the distribution of the sale proceeds. The stipulation was accepted by the court and was adopted as a court order.[2]
Since July 2000, the parties have been engaged in extended, post-judgment disputes concerning the stipulation and the disposition of the properties. The Southbury property has been disposed of in accordance with the terms of the stipulation. This ruling addresses the remaining issues regarding the disposition of the Bridgeport property.
The stipulation was signed by attorney Richard Pate on behalf of Michael Montanaro, and by attorney A. Reynolds Gordon, on behalf of "Defendants, Gail Gorelick, Glenn Gorelick, Trustee for Kira Gorelick, and Glen Gorelick." Attorney Gordon had filed an appearance in the case indicating that he represented these defendants. Although Attorney Gordon filed an appearance and executed the stipulation on behalf of Glen Gorelick, Gorelick was never formally made a party to this action in his individual capacity. It should also be noted that throughout this litigation, Gorelick represented that he held a 7.5% interest in the Bridgeport property.[3]
In June 2001, approximately a year after the execution of the CT Page 310 stipulation, Glenn Gorelick. filed a motion to rescind the stipulation contending that he did not authorize Attorney Gordon to represent him or to sign the stipulation on his behalf. Among other things, the evidence indicated that Gorelick had obtained a 7.5% interest in the Bridgeport property pursuant to a quit claim deed executed by Montanaro in August 28, 1989 and filed by Gorelick in December 1997, three months after the institution of this action. Gorelick's motion to rescind the stipulation was denied after a hearing. See Transcript of Decision dated June 26, 2001.
On July 9, 2001, the plaintiff filed a pro se "Objection to motion that Glen Gorelick Trustee has an interest in 7.5% of title." In this objection, the plaintiff alleged that Glen Gorelick's deed through which he acquired the 7.5% interest in the property was invalid because it lacked an acknowledgment or a notarization. This objection was not ruled on by the court, most likely because Gorelick had not filed a "motion" as referred to in the objection.[4] In any event, this objection filed by the plaintiff did not claim that the deed had been obtained through fraud.
In August 2001, the plaintiff, again proceeding pro se, filed a motion to amend the complaint. In this proposed amended complaint, the plaintiff, inter alia, claimed for the first time in any written submission that this deed was fraudulently obtained. The motion to amend was denied on the ground that judgement had entered in the case in August 1999 and the motion was not accompanied with a motion to open the judgment.
The Bridgeport property has now been sold and two issues remain regarding the disposition of the sale proceeds. The plaintiff contests the validity of Glenn Gorelick's 7.5% interest contending that it was fraudulently obtained. The defendants contest a commission claimed by a real estate broker regarding the sale. For the following reasons, the court resolves these issues in favor of the defendants.[5]
 DISCUSSION Glenn Gorelick's Deed
Fraud involves harm caused by a deception committed in order to induce another to suffer a loss or to surrender a legal right. Fraud must be proven by clear, precise and unequivocal evidence. See Billington v.Billington, 220 Conn. 212, 217 (1991).
The plaintiff maintains that although he signed the deed in question CT Page 311 and his signature was witnessed, he signed the deed in blank expecting it to be executed in favor of an attorney to compensate the attorney for legal services performed regarding the property. Gorelick, on the other hand, insists that the deed was given to him as compensation for a disproportionate amount of work performed by him as part of the partnership between him and the plaintiff.
Gorelick also argues that the stipulated judgement executed by the parties in 2000 contemplated the resolution of all issues between the parties, and this fraudulent conveyance claim was not asserted at that time. Gorelick further claims that the plaintiff's claim for fraud is barred by the statute of limitations. As more particularly discussed, below, the court agrees with the defendant.
The statute of limitations for the institution of suit alleging fraud is governed by the three year limitation period of General Statutes § 52-577. This statute provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
"Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins . . . with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Citations omitted; internal quotation marks omitted.) Collum v. Chapin, 40 Conn. App. 449, 451,671 A.2d 1329 (1996). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id. "The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Id.
The alleged wrongful act in this instance constituting the fraud took place in December 1997 when defendant Gorelick filed the deed. No action for fraud was instituted or claimed within three years of this date. No such claim was made despite clear evidence in the record that within this time period, Gorelick asserted that he had an interest in the property based on this deed. [See footnote three]. Moreover, the claim of fraud was not asserted as an affirmative defense either when the stipulated judgment was executed in July 2000 or when Gorelick's motion to rescind the stipulation was heard by the court in June 2001.
The plaintiff's only response to the statute of limitations defense has been the assertion of a motion seeking a writ of audita querela. This CT Page 312 common law writ by definition involves the following:
A remedy granted in favor of one against whom execution has issued or is about to issue on a judgment the enforcement of which would be contrary to justice, either because of matters arising subsequent to its rendition, or because of prior existing defenses that were not available to the judgement debtor in the original action because of the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control. Ballentine's Law Dictionary (3rd Ed.). See generally, Ames v. Sears, Roebuck Company, 206 Conn. 16, 20-21,536 A.2d 563 (1988); Oakland Heights Mobile Park, Inc. v. Simon,40 Conn. App. 30, 32, 668 A.2d 737 (1995).
As defined, the writ of audita querela is inapplicable here. Because this ancient writ impairs the finality of judgments, the common law precluded its use in cases in which the movant sought to rely on a defense that he had the opportunity to raise before the entry of judgment. The writ is most appropriately raised because of events occurring after the entry of judgment which should operate to discharge a party from the effect of a judgement.
As discussed above, the events forming the basis of the plaintiff's fraud allegation arose before the entry of judgment and he had the opportunity to assert this allegation before that time. The plaintiff has not even claimed that he did not have this opportunity or was precluded from exercising it because of some wrongful act of defendant Gorelick. The plaintiff has not cited and the court has not located any cases in which a writ of audita querela has been used in circumstances similar to those presented here. See generally, 7 Am.Jur.2d Audita Querela, § 3. The application of the doctrine of audita querela to these facts would operate to subsume the statute of limitations in its entirety and would be in direct contravention of the principal that the doctrine should not unduly impair the finality of judgements.
Alternatively, the court also finds that the plaintiff has failed to meet his burden of proof on the issue of fraud. The circumstances of the execution of the deed and its filing are certainly suspect (for example, the filing of the deed eight years after its execution and only after the institution of this lawsuit.) However, fraud must be proven by clear, convincing and unequivocal evidence. See Billington v. Billington, supra, 220 Conn. 217. After consideration of the totality of the evidence presented, the reasonable inferences that can be drawn therefrom, and the demeanor and credibility of the witnesses, the court concludes that the plaintiff's proof falls short of this standard. CT Page 313
 Listing Contract
The final issue regarding the sale of the Bridgeport property involves a claim by a broker, Harry Weichsel, that he is entitled to a commission as a result of the sale. The court directed Weichsel to be notified about this dispute and he appeared with counsel to be heard on the issue. The facts relevant to this matter are as follows. The stipulated judgement provided that in regard to the Bridgeport property, "Montanaro shall have authority to make final decisions on development and marketing and sale, subject to consultation with Gorelick and his counsel. (Consultation does not mean consent.)" In or about November 2001, a contract was negotiated to sell the property to Primrose Construction. The contract was signed by Michael Montanaro, Glenn Gorelick, and Gail Gorelick as the sellers. This contract contains a provision that the "seller warrants and represents that seller has not signed a written listing with any broker."[6]
Nevertheless, the evidence established that Montanaro had in fact executed a broker agreement with Weichsel on or about March 15, 2001. The evidence also indicates that the defendants objected to the execution of the contract to the extent that it provided for the payment by them of any broker commission. Additionally, the court finds the broker in fact was not instrumental in obtaining Primrose Construction as the purchaser for the property.
Thus, the defendants object to the payment of any commission to Weichsel claiming that the broker contract is voidable and unenforceable because all the owners of the property did not execute the agreement as required by statute, General Statutes § 20-325a.[7] The law is that the requirements of 20-325 a (b) are mandatory rather than permissive and that the statute is to be strictly construed. McCutcheon Burr,Inc. v. Berman, 218 Conn. 512, 520, 590 A.2d 438 (1991). Weichsel does not dispute the positions that § 20-325a requires all the owners of the property to sign the listing agreement, and that this signing is necessary for the broker to commence any action to recover a commission under the agreement. See generally, McCutcheon Burr, Inc. v.Berman, supra, 218 Conn. 522 (a listing agreement is not in compliance with the statute when the signatures of both record owners are omitted.) He contends that the agreement is exempted from the statute's mandates by the exception of § 20-329 which provides that the provisions of the statute do not apply to "any person selling real estate under order of any court." General Statutes § 20-329. Weichsel reasons that since Montanaro was authorized by court order to sell the property without the consent of the other property owners, he was also authorized to execute the listing agreement without their signatures within the purview of § 20-329. This reasoning fails for numerous reasons. CT Page 314
First, the exception of § 20-329 applies to a court appointed officer or committee who is ordered by the court to sell property and who seeks compensation as a result. Weichsel was not authorized by the court to sell the property, Montanaro was, and therefore, Weichsel cannot seek the benefit of § 20-329. Furthermore, although Montanaro was authorized to sell the property, he was not authorized to sell the property without consultation with Gorelick or without the signatures of all the parties as required by law. The record in this matter makes this point abundantly clear. The court finds that Montanaro executed the listing agreement without the "consultation" as required and contemplated by the stipulation. Additionally, numerous motions to compel and motions for contempt were filed by Montanaro to require Gorelick to sign agreements to sell the property exactly because he knew that the signatures of the record owners were necessary for a sale contract to be effective. Similarly, the signatures of the record owners were necessary for an enforceable listing agreement. The law is established that a broker who proceeds under a listing agreement that fails to comply with the statutory mandates does so at his peril. Thornton Real Estate, Inc.v. Lobdell, 184 Conn. 228, 230-31, 439 A.2d 946 (1981).
Thus, the court holds that Weichsel is not entitled to a commission from the funds being. held in escrow and that the funds shall be disbursed without payment of any such commission from these funds.
 CONCLUSION
Therefore, after the passage of twenty days from the dater hereof, the remaining proceeds of the sale of the Bridgeport property being held in escrow shall be disbursed forthwith consistent with this decision and the stipulated judgment.
So ordered this 7th day of January 2003.
STEVENS, J.